**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GINI F. RIGGS,

       Plaintiff,

       v.

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

       Defendant.

_____/

No. C 04-04370 PJH

**MEMORANDUM DECISION AND ORDER THEREON**

      Gini F. Riggs ("Riggs") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g).  Having considered the parties' cross-motions, the pertinent legal authorities, and having reviewed the administrative record, the court hereby remands this case to the Commissioner for further proceedings in accordance with this court's order.

**BACKGROUND**

      Riggs, at the age of 36, applied for Social Security disability insurance benefits on June 29, 2000, alleging disability beginning December 15, 1991.  Riggs' claim was denied both initially and on reconsideration.  Riggs filed a request for a hearing, which was held before an administrative law judge ("ALJ") on March 17, 2003.  Riggs holds a GED, and studied pastoral counseling for several years at the university level, though these studies never yielded a degree.  Administrative Record ("A.R.") 18.  Riggs' actual employment history is unclear from the record, but she claims to have been employed in the health nutrition business selling vitamins and serving as a trainer for seven years, and her income statements indicate that her only potentially substantial gainful activity in this line of work took place in 1991.  A.R. 18, 249.  Riggs also purportedly served as a nail technician, providing pedicures and

**United States District Court**
For the Northern District of California

1   manicures for approximately two years in the mid-1980s. Riggs also served as a part-time

2   residential aide in a treatment center for a period of time in 1996 and 1997. A.R. 267-68.

3       Riggs alleges that she became disabled on December 15, 1991, as a result of various

4   impairments, including hepatitis B and C, arthritis of the knee and neck, and a host of other

5   ailments. A.R. 79. Riggs contends that the combination of her ailments and injuries renders

6   her disabled. She claims severe muscle spasms and chronic pain, conditions that are both

7   worsened by general activity and movement. A.R. 252. Riggs is adopted, and no biological

8   familial medical history is available. A.R. 139.

9                                    **LEGAL STANDARD**

10      To qualify for disability benefits under the Social Security Act, a claimant must establish

11   that she was unable "to engage in any substantial gainful activity by reason of any medically

12   determinable physical or mental impairment which . . . has lasted or can be expected to last

13   for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1)(A). The

14   claimant bears the initial burden of proving that she suffers from a disability. See Roberts v.

15   Shalala, 66 F.3d 179, 182 (9th Cir. 1995).

16      Regulations promulgated by the Commissioner set forth a five-step sequential analysis

17   to be used by an ALJ in determining whether a claimant is disabled. See 20 C.F.R. §

18   404.1520. The inquiry is terminated at the stage where a decision can be made that the

19   claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990). At

20   Steps One through Four, a claimant must demonstrate a severe impairment and an inability to

21   perform past work; the Commissioner bears the burden only if the sequential evaluation

22   process proceeds to Step Five. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987);

23   Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

24      At Step One, the ALJ must determine whether the claimant is currently engaged in

25   "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled and

26   the claim is denied. If the ALJ determines that the claimant is not currently engaged in

27   "substantial gainful activity," Step Two requires the ALJ to determine whether the claimant has

28

a medically severe impairment or combination of impairments.  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  At Step Three, the ALJ compares the claimant's impairment to a listing of impairments.  If a claimant's impairment meets or equals an impairment in the listing, a disability is presumed and benefits awarded.  See 20 C.F.R. § 404.1520(d).  The ALJ proceeds to Step Four only if the claimant's condition does not meet the listing at Step Three. At Step Four, the ALJ considers whether the claimant has sufficient "residual functional capacity" ("RFC") to perform her past work despite the impairment and/or limitations.  20 C.F.R. § 404.1520(e).  If the claimant has sufficient RFC, benefits are denied.  If not, the burden shifts to the Commissioner at Step Five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

## ALJ'S FINDINGS

The ALJ determined that Riggs was not disabled after performing the requisite sequential analysis.  He determined that Riggs' income since December 15, 1991 was insufficient to support a finding of substantial gainful activity.  A.R. 18.  Thus, the ALJ assessed Step One in Riggs' favor.

With respect to Step Two, the ALJ stated that Riggs alleged numerous medical difficulties, including decreased visual acuity, ear congestion, shortness of breath, status post mitral valve prolapse, gastroesophageal reflux disease, interstitial cystitis, and status post hysterectomy and abortions times three.  The ALJ noted, however, that there were no ailments among this list that were medically determinable impairments lasting twelve contiguous months or more.   A.R. 19.  The ALJ also observed that these alleged difficulties were reported to a doctor on March 23, 2001, and that Riggs was found, nonetheless, to have minimal functional limitations. A.R. 19.   The medical evidence, according to the ALJ, indicated that Riggs suffered from hepatitis C, degenerative disc disease of the cervical

3

United States District Court

For the Northern District of California

1   spine, arthritis of the knee, headaches, chronic pain, a histrionic personality disorder, and

2   substance abuse in remission.  A.R. 19.

3        The ALJ found these impairments to be "severe" within the meaning of the Regulations,

4   but not severe enough to meet the listing at Step Three.  The ALJ then proceeded to Step

5   Four, and considered whether Riggs had sufficient "residual functional capacity" ("RFC") to

6   perform her past work.  A.R. 19.

7        At Step Four, the ALJ found that Riggs' testimony of her functional limitations was not

8   credible, because she has a history of drug and alcohol abuse, driving while intoxicated, a

9   felony conviction for using a stolen credit card, and "lying as a child."  A.R. 19.  Moreover, the

10  ALJ noted that Riggs' account of prior earnings was inconsistent with her earnings record.

11  According to the ALJ, Riggs exaggerated her diagnoses, as well.  He observed that Riggs

12  changed doctors frequently, and sought "non-traditional sources." A.R. 19.  Given Riggs' lack

13  of credibility, the ALJ discounted Riggs' complaints that were not confirmed by objective

14  medical findings.  A.R. 20.  ALJ Robinson noted that examinations of Riggs by doctors and

15  psychologists since her June 29, 2000 application for Supplemental Social Security, were

16  "pretty benign with few, if any, objective findings."  A.R. 20.  The ALJ assigned substantial

17  weight to at least some parts of the opinions of the following physicians: Dr. John H. Healey,

18  Jr. M.D., Dr. Andrew Maternowski, M.D., Dr. Mary Downs, M.D., Dr. Paul L. Craig, Ph.D., and

19  Dr. Mary G. Langdon, M.D..

20       The ALJ concluded that Riggs retained the RFC to lift and/or carry up to 20 pounds

21  occasionally and up to 10 pounds frequently, and thus assessed Riggs as not disabled at

22  Step Four.  The ALJ found that Riggs' only past relevant substantial gainful activity was her

23  work in 1991 "probably selling vitamins."  The ALJ found that the combination of Riggs'

24  physical and mental impairments would not prevent her from returning to this type of work. A.R.

25  21.

26       The ALJ also proceeded, in the alternative, to Step Five of the disability evaluation,

27  applicable if the claimant has established that she has no past relevant work or cannot

28

4

1   perform her past relevant work because of her impairments.  A.R. 21.  As noted, at Step Five,

2   the burden shifts to the Social Security Administration to show that there are jobs existing in

3   significant numbers in the national economy that the claimant can perform, consistent with her

4   RFC, age, education, and work experience.  See Andrews, 53 F.3d at 1040.

5       Because Riggs was 36 years old on December 15, 1991, the ALJ categorized her as

6   a "younger individual" under 20 C.F.R. § 416.963.  A.R. 22.  The ALJ concluded that, because

7   the evidence supported a finding that Riggs could perform the demands of the full range of

8   light work, a finding of "not disabled" was directed by Medical-Vocational Rule 202.20.  A.R.

9   22.

10       In the alternative to his finding at Step Four, the ALJ concluded that Riggs was not

11   disabled at Step Five, finding that the evidence demonstrated that Riggs was able to perform

12   the exertional requirements of the full requirements of light work, and was thus "not disabled."

13   A.R. 22.

14                                   **DISCUSSION**

15   **A.    STANDARD OF REVIEW**

16       An ALJ's decision can be set aside only if "the ALJ's findings are based on legal error

17   or are not supported by substantial evidence."  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.

18   1999).  Substantial evidence is relevant evidence that a reasonable mind might accept as

19   adequate to support a conclusion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

20   The court is required to review the administrative record as a whole, weighing both the

21   evidence that supports and detracts from the ALJ's conclusion.  Id.  Where the evidence is

22   susceptible to more than one rational interpretation, the court must uphold the ALJ's decision.

23   Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

24

25   **B.    ISSUES**

26       Riggs' opening brief and reply are less than clear regarding the issues she presents on

27   appeal before this court, but it appears that she seeks remand on the following bases:

28       1.    the ALJ failed to properly evaluate Riggs' subjective complaints;

5

2.   the ALJ failed to properly apply 20 C.F.R. § 404.1520a to Riggs' mental

impairments in violation of Riggs' procedural due process rights**;**

3.   the ALJ failed to properly evaluate Riggs' obesity and "interstitial cystitis"

complaint;

4.   the ALJ erred in relying on the vocational grids because they do not completely

and accurately represent Riggs' limitations;

5.   the ALJ failed to properly weigh Riggs' treating physicians' testimony, also in

violation of Riggs' procedural due process rights; and,

6.   Riggs has rebutted the Commissioner's arguments, because the arguments are

either not based on her own rules, or she has failed to present substantial

evidence in support of her arguments.

**C.   ANALYSIS**

**I.   The ALJ's Evaluation of Riggs' Subjective Complaints**

Riggs contends that the ALJ failed to properly evaluate her subjective complaints,

because he did not identify the specific evidence that undermined Riggs' complaints,

contained in statements she made in Social Security applications on 7/17/2000 (A.R. 88) and

9/24/2000 (A.R. 118-120).

Once a claimant produces objective evidence of an underlying impairment that is

"reasonably likely" to cause some degree of pain, the ALJ may not reject the claimant's

subjective complaints regarding the extent and severity of her pain merely because the

severity of the pain cannot be supported by objective medical evidence.  Bunnell v. Sullivan,

947 F.2d 341, 343 (9th Cir. 1991) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th

Cir.1986)).  For the ALJ to reject the claimant's complaints, the ALJ must provide "specific,

cogent reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1996).  General

findings are not sufficient to support an ALJ's discrediting of a claimant's subjective

complaints.  Instead, "the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

1

2          Absent affirmative evidence of malingering, the ALJ can reject the claimant's testimony

3    about the severity of her symptoms only by offering clear and convincing reasons.  Id.

4    Evidence that can be considered in evaluating a claimant's credibility includes inconsistencies

5    in the claimant's testimony, the extent of the claimant's daily activities, physicians'

6    observations, or any unexplained failure to follow a course of prescribed treatment.  Bunnell,

7    947 F.2d at 346.   Additionally, notwithstanding the Bunnell standard, a lack of objective

8    medical evidence may be a relevant consideration when coupled with the above factors in

9    determining the severity of the claimant's pain.  Rollins v. Massanari, 261 F.3d 853, 857 (9th

10   Cir. 2001).  While an ALJ's perception of the claimant at a hearing is not alone a sufficient

11   basis for discrediting that claimant's testimony, a claimant's tendency to exaggerate,

12   compounded by her presentation at the hearing, can be a proper basis for rejection of a

13   claimant's testimony.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).  An ALJ

14   may also properly consider the claimant's work record, reputation for truthfulness, and the

15   inconsistencies of a claimant's testimony with medical records and other evidence in the

16   record.  Light v. Soc. Sec. Admin., 199 F.3d 789, 792 (9th Cir. 1997); Verduzco v. Apfel, 188

17   F.3d 1087, 1090 (9th Cir. 1999).

18          Here, the ALJ found Riggs' testimony of her functional limitations "not very credible,"

19   noting that Riggs has a history of drug and alcohol abuse, citations for driving while

20   intoxicated, a felony conviction for using a stolen credit card, and "lying as a child."  A.R. 19.

21   The ALJ observed that Riggs' account of her past work life and past earnings were

22   inconsistent with her actual earnings record.  A.R. 19.  The ALJ also took into account Riggs'

23   "unlikely but unverifiable" statements to examiners, including statements that she was a

24   manicurist for Tammy Faye Bakker and that millionaires wanted to marry her.  A.R. 19.  The

25   ALJ remarked that Riggs had shown a tendency to exaggerate her diagnoses.  For support,

26   he notes that, for Riggs, "a urinary tract infection became interstitial cystitis and

27   gastroesophegeal reflux disease became 'dissolving my esophagus.'" A.R. 19.  He also took

28

United States District Court

For the Northern District of California

1  note of the fact that Riggs had been referred to physical therapy, but had attended either

2  intermittently, or not at all.  Finally, the ALJ noted that Riggs changed doctors frequently and

3  "sought non-traditional sources."  A.R. 20.  Given all of these factors, the ALJ decided to

4  discount any complaints that could not be confirmed by the objective findings, stating: "[i]t is

5  difficult to determine what is a chronic pain syndrome supported by objective clinical findings

6  and what is pure fabrication by a less than credible patient."  A.R. 19-20.

7       Even assuming that Riggs produced objective evidence of underlying impairments that

8  are reasonably likely to cause pain, the ALJ satisfied the <u>Bunnell</u> standard by providing this list

9  of "specific, cogent reasons" for finding Riggs' testimony less than credible.  The ALJ did not

10  simply make a general finding of lack of credibility.  Instead, he carefully outlined the aspects

11  of Riggs' testimony and complaints which were not credible and were undermined by

12  evidence on the record and his perceptions of Riggs.  For these reasons, the ALJ properly

13  evaluated Riggs' subjective complaints in his findings.

14       **II.     The ALJ's Evaluation of Riggs' Alleged Mental Impairments**

15       Riggs also claims that the ALJ erred by not applying 20 C.F.R. § 404.1520a to her

16  alleged mental impairments.  The procedure required by § 404.1520a requires the hearing

17  office and ALJ to record the pertinent signs, symptoms, findings, functional limitations and

18  effects of treatment contained in the case record, in order to determine if a mental impairment

19  exists.  20 C.F.R. § 404.1520a(b)(1).  If an impairment is found, the examiner must analyze

20  whether medical findings relevant to a claimant's ability to work are present or absent.  20

21  C.F.R. § 404.1520a(b)(2).  The examiner must then rate the degree of functional loss resulting

22  from the impairment in certain areas deemed essential for work.  If the mental impairment is

23  considered "severe," the examiner must then determine if it meets a listed mental disorder.

24  20 C.F.R. § 404.1520a(c)(3).  Social Security regulations require an ALJ to fill out and attach

25  a psychiatric review technique form ("PRTF"), evaluating the severity of mental impairments, to

26  decisions "in any case where there is evidence which indicates the existence of a mental

27  impairment."  <u>Gutierrez v. Apfel</u>, 199 F.3d 1048, 1049 (9th Cir. 2000), citing 42 U.S.C. §

28

United States District Court

For the Northern District of California

1  421(h).

2      In Gutierrez, the claimant contended that she suffered from depression and physical

3  pain caused by rheumatism and arthritis.  Id.  The ALJ concluded, based on the evidence

4  presented, that Gutierrez suffered from a mental impairment, but was expected to recover

5  within the twelve months durationally required to qualify for disability benefits.  Id.  The district

6  court upheld the ALJ's decision, finding that the decision was supported by substantial

7  evidence because Gutierrez had failed to sustain her burden of establishing conclusively that

8  she had a disability that would last the requisite twelve months.  Id.  The district court also

9  regarded the ALJ's failure to complete a PRTF as a mere technical oversight, because the

10  ALJ inquired into subjects covered by the PTRF at the hearing.  Id.

11      On review, the Ninth Circuit found the ALJ's failure to fill out and attach a PTRF

12  improper, because the claimant had a "non-frivolous claim of mental impairment," and the

13  ALJ's failure to complete the PTRF was material.  Id.  The court distinguished Gutierrez's

14  "colorable claim" of mental impairment from a disability claim based primarily on physical

15  limitations, "even if a claimant alleged a minor nonexertional impairment such as controllable

16  alcohol abuse."  Gutierrez, 199 F.3d at 1151, citing Hardy v. Chater, 64 F.3d 405, 408 (8th

17  Cir. 1995), cf. Riffe v. Shalala, 1994 WL 564656, at *6 (N.D.Cal.1994).  The Gutierrez court

18  focused on the fact that Gutierrez's claim of depression was "central to her application for

19  disability benefits," although she also alleged pain due to arthritis.  Id.  Thus, in Gutierrez, the

20  Ninth Circuit followed other circuits in "recognizing that where there is a colorable claim of

21  mental impairment, 20 C.F.R. § 404.1520a requires the evaluation form to be completed and

22  appended to the decision, and the failure to do so requires remand to the Social Security

23  Administration."  Gutierrez, 199 F.3d at 1151.

24      Riggs alleges that the ALJ failed to fulfill the additional requirements of 20 C.F.R.   §

25  404.1520a for evaluating a claimant's mental impairments.  There are allegations of  mental

26  impairment, in addition to physical pain and impairment throughout the record.  The key issue

27  then is whether Riggs sufficiently alleged a mental impairment, not only to sustain her burden

28

9

of demonstrating a disability, but also to rise to the level of a "colorable claim" of mental

impairment sufficient to trigger the 20 C.F.R. 404.1520a required PRTF, as required by

Gutierrez.

Several aspects of the available record support Riggs' contention that she sufficiently

alleged a colorable claim of mental impairment.  Although Riggs did not explicitly allege

mental impairment in her Social Security benefits application, the ALJ, pursuant to his duty to

develop the record on a claimant's behalf, recognized and incorporated into his decision

several evaluations of Riggs that indicate mental impairment sufficient to trigger the special

procedure mandated by 20 C.F.R. § 404.1520a. See Brown v. Heckler, 713 F.2d 441, 443

(9th Cir. 1983) (ALJ has a duty to fully and fairly develop the record and assure that claimant's

interests are considered, even if claimant is represented by counsel).

First, the ALJ accepted the findings of DDS Examiner and psychiatrist William

Campbell, M.D., and found a medically determinable impairment of histrionic personality

disorder, severe within the meaning of the regulations, but not severe enough to meet or

medically equal one of the impairments listed in Appendix 1, Subpart P, regulations No. 4.

A.R. 19.  Second, the ALJ acknowledged that Paul Craig, Ph.D, neuropsychologist for DDS,

assessed Riggs with some limitations in math, and as "highly committed to the notion that she

is disabled."  A.R. 21.  Third, the ALJ acknowledged that Dr. Mary Langdon, M.D., a

psychiatrist, evaluated Riggs with "a depressive disorder . . .  secondary to pain."  A.R. 227.

Riggs also notes several allegations of mental impairment that were apparently

rejected by the ALJ in his Step Two assessment.  For example, although the ALJ accepted

some of Dr. Craig's evaluation of Riggs, the ALJ failed to mention, in his findings, Dr. Craig's

assessment that Riggs demonstrated  "some borderline personality characteristics, including

multiple suicidal gestures in the past."  A.R. 221 - 22.  Similarly, Dr. Campbell, in addition to

finding that Riggs suffered "histrionic personality disorder," assessed Riggs as suffering from

"a personality disorder, with conflicts around issues of identity, self-esteem, intimacy, impulse

control, dependency and aggression."  A.R. 182.  Moreover, he evaluated Riggs as "very

**United States District Court**
For the Northern District of California

1  distractible ... she may have attention deficit disorder." A.R. 182. The ALJ's selective review

2  of the record is also demonstrated by his acceptance of a portion of Riggs' evaluation by

3  Andrew Maternowski, M.D., in which the doctor explained that Riggs attended physical

4  therapy intermittently, if at all. However, the ALJ failed to consider Maternowski's statement

5  that Riggs suffered, among other things, "probable depression." A.R. 162.

6       The Commissioner argues that the ALJ's failure to exercise the special procedure

7  mandated by 20 C.F.R. § 404.1520a is, if any error at all, merely harmless. However, as

8  Riggs correctly notes, the ALJ refused to accept or comment on mental health findings of

9  treating physicians Healey, Maternowski and DeWys, holding simply that Riggs retained the

10 RFC for light work. The ALJ's failure to adequately consider Riggs' alleged mental

11 impairments, with the exception of the "histrionic personality disorder," constitutes an implied

12 finding that these impairments were less severe than those described by Riggs' own

13 physicians. Because the ALJ's basis for dismissing or ignoring these physicians' opinions is

14 undocumented and unclear, the ALJ failed to comply with 20 C.F.R. 404.1520a.

15      Thus, with respect to Riggs alleged mental impairments, particularly depression, the

16 ALJ took note of the condition, but made no findings regarding the severity of Riggs'

17 depression or the combined severity of Riggs' depression and her physical impairments.

18 Because this court's review of the record suggests that there is substantial evidence that

19 Rigg's mental impairments were severe, the court concludes that the ALJ erred at Step Two,

20 by not properly applying 20 C.F.R. 404.1520a.

21

22      **III. The ALJ's Evaluation of Riggs' Alleged Obesity and Interstitial Cystitis**

23      Riggs argues that because she has alleged impairments which would be exacerbated

24 by obesity "sufficient to arguably meet or equal the listings," the Commissioner is compelled,

25 by Social Security Ruling ("SSR") 02-01p to evaluate the exacerbation of those limitations by

26 Riggs' alleged obesity. Pl.'s Mot., p.12. SSR 02-01p provides that a listing may be met in a

27 Step Three determination "if there is an impairment that, in combination with obesity, meets

28

**United States District Court**
For the Northern District of California

1    the requirements of a listing." SSR 02-01p. Riggs also argues that the Ninth Circuit's

2    "multiple factors" discussion in Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003) required

3    the ALJ to consider, in his RFC assessment, the combined effect of all Riggs' impairments

4    without regard to whether any such impairment would, individually, be considered "severe."

5        The Celaya court offered three explanations for why the ALJ should have considered

6    the claimant's obesity even though it was not raised explicitly as a disability. Id. at 1182.

7    First, the court noted that obesity was raised implicitly in the claimant's report of symptoms.

8    Id. Second, the court noted that it was clear from the record that the claimant's obesity was at

9    least close to the listing criterion, and was a condition that could exacerbate her reported

10   illness. Id. Third, in light of the claimant's pro se status, the court held that the ALJ's

11   observation of the claimant and the information in the record should have alerted the ALJ to

12   the need to develop the record. Id.

13       The instant case is distinguishable from Celaya. First, Riggs did not present any

14   evidence of disability due to obesity until this appeal. Second, this court observes that Riggs'

15   record is silent as to whether and how Riggs' obesity exacerbates her impairments. There is

16   no medical evidence in the record conclusively linking Riggs' obesity to limitations in her

17   ability to function. Third, Riggs was represented by legal counsel throughout the proceedings.

18   Although Riggs asserts in her request for review that she was "not represented properly and

19   additional evidence ... was changed and not presented correctly by the lawyer at the last

20   minute before hearing without my permission," her complaints, even if true, do not amount to a

21   complete lack of legal counsel, as was the case in Celaya. A.R. 11.

22       While the Celaya court acknowledged that even where a claimant is represented by

23   counsel, the ALJ has some burden to develop the record, in a more recent decision, Burch v.

24   Barnhart, the Ninth Circuit held that Celaya did not specify the parameters of that burden. 400

25   F.3d 676, 682 (2005). In Burch, the court specifically considered the claimant's

26   representation by counsel in deciding that the ALJ did not err in not considering obesity. Id.

27   Similarly, this court takes into consideration that Riggs was represented by counsel and finds

28

that she failed to carry the initial burden of demonstrating that she was disabled by obesity.

See 42 U.S.C. § 423(d)(5); see also, Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)

(claimant bears the initial burden of demonstrating that she is disabled).

For all the reasons above, the court concludes that the ALJ did not err in failing to consider Riggs' obesity.

Riggs also argues that the ALJ failed to consider her allegations of interstitial cystitis, and that the issue of her alleged interstitial cystitis should be developed on remand.  However, the ALJ explicitly included interstitial cystitis in the list of impairments which he found to be not medically determinable for a period meeting the durational requirement of twelve months. A.R. 19.  Thus, the ALJ appropriately disposed of the issue of Riggs' alleged interstitial cystitis.

Additionally, Riggs' argument regarding the interstitial cystitis fails for the same reasons that her obesity argument failed.  Riggs failed to allege interstitial cystitis in her Social Security application, and failed to carry the burden of demonstrating that she was disabled by interstitial cystitis.   See 42 U.S.C. § 423(d)(5); see also, Swenson, 876 F.2d at 687. Moreover, the record lacks evidence linking Riggs' alleged interstitial cystitis to her functional limitations.  Thus, the court finds that the ALJ did not err in failing to consider Riggs' alleged interstitial cystitis in his evaluation.

**IV.    The ALJ's Grids Reliance at Step Five**

The ALJ determined, at Step Four, that Riggs' impairments would not prevent her from returning to the type of substantial gainful activity in which she was last involved --"probably selling vitamins."  A.R. 21.   Having made this determination, the ALJ stated, without explanation: "In the alternative, I will proceed with the subsequent step in the five-step sequential evaluation of disability."  A.R. 21.

At Step Five, the burden shifts to the Social Security Administration to demonstrate that there are other jobs that exist in significant numbers in the national economy which the claimant could reasonably perform.  20 C.F.R. § 404.1560(b)(3); Tackett, 180 F.3d at 1100.

13

1  The Commissioner can meet the burden of demonstrating appropriate jobs in "significant

2  numbers" in one of two ways.  The ALJ can either hear the testimony of a vocational expert

3  ("VE") or can refer to the Medical-Vocational Guidelines (commonly known as the "grids")

4  found at 20 C.F.R. pt. 404, subpt. P, app. 2.  Id. at 1101.

5       The grids are "a matrix system for handling claims that involve substantially uniform

6  levels of impairments."  Id.; see 20 C.F.R. pt. 404, subpt. P, app 2.  The grids provide the

7  Commissioner an efficient means for assessing claims in a uniform and streamlined fashion.

8  Id.  The efficiency of the grids justifies the ALJ's use thereof, as opposed to a VE, only when

9  the grids *completely and accurately* represent a claimant's limitations."  Id. (emphasis in

10  original).  "In other words, a claimant must be able to perform the *full range* of jobs in a given

11  category, i.e., sedentary work, light work, or medium work."  Id. (emphasis in original).

12       A "non-exertional impairment" is an impairment that limits the claimant's ability to work

13  "without directly affecting his or her strength."  Desrosiers v. Secretary of Health and Human

14  Servs., 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J., concurring) (internal citations

15  omitted).  The Ninth Circuit has recognized that significant non-exertional impairments may

16  render reliance on the grids inappropriate.  Id. at 577.  Significantly, however, a mere

17  allegation of a non-exertional limitation does not automatically preclude application of the

18  grids, and should not allow a claimant to make an end run around the more efficient grids

19  evaluation.  Id.  By the same token, however, the Desrosiers court observed that "a non-

20  exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways

21  not contemplated by the guidelines."  Id.  In such a case, the grids are inapplicable.  Id.  The

22  ALJ should first determine if a claimant's non-exertional limitations significantly limit the range

23  of work permitted by his exertional limitations.  Id.

24       The Ninth Circuit, in Bruton v. Massanari, articulated the appropriate scope of an ALJ's

25  use of the grids.  268 F.3d 824 (9th Cir. 2001).  In Bruton, a doctor's medical report stated that

26  the claimant, Bruton, was "prophylactically precluded" from prolonged work at or above the

27  shoulder level.  Id.  The doctor's medical report suggested that Bruton's shoulder impairments

28

1  may have amounted to a non-exertional limitation and, "[b]ecause Bruton *may* have that

2  impairment," the court concluded that the Commissioner could not appropriately rely on the

3  grids, and should, instead, rely on the testimony of a VE.  Id. (emphasis added).

4       Relying on Tackett and Bruton, Riggs argues that the ALJ improperly relied on the

5  grids, because the grids do not completely and accurately represent her limitations.  Riggs

6  contends that the ALJ should have taken into account her alleged non-exertional limitations,

7  including: (1) Dr. Craig's "mathematics disorder" diagnosis; (2) Dr. Campbell's findings of

8  issues of identity, self esteem, intimacy, impulse control, dependency and aggression, as well

9  as high distractibility, potential attention deficit disorder, and  "histrionic personality disorder";

10  and (3) other physicians' "findings of [Riggs'] mental illness which impliedly would limit [Riggs']

11  ability to perform a full level of light work."  Pl.'s Reply, p.13.  Riggs argues that the ALJ should

12  have found, based on the limitations detailed in the record, that the aggregate of these

13  limitations would interfere with Riggs' ability to perform the full range of light work.

14       The Commissioner counters that the ALJ properly applied the grids because the ALJ

15  had concluded that Riggs had the RFC to perform a full range of light work.  According to the

16  Commissioner, Riggs' mere allegations that she could not perform the full range of light work

17  did not preclude the ALJ from applying the grids.

18       Here, the ALJ's failure to apply 20 C.F.R. § 404.1520a to Riggs' alleged mental

19  impairments resulted in an improper application of the grids.  Because the ALJ did not

20  consider Riggs' mental impairments in his findings, he did not properly weigh those

21  allegations in his decision to apply the grids.  The mere possibility, rather than certainty, that

22  the claimant suffers from the non-exertional limitation, is enough to overcome the interest in

23  judicial efficiency, and to mandate VE testimony on the topic.  Bruton, 268 F.3d at 828.

24  Notably, the ALJ had a VE at the Riggs hearing, but chose to apply the grids, rather than

25  availing himself of the VE's testimony.  See A.R. 263.  In making the grids determination, the

26  ALJ failed to properly consider evidence that Riggs' mental impairments were severe, as

27  discussed above, and thus clearly did not consider them as potential detractors from her

28

United States District Court
For the Northern District of California

1   ability to perform the full range of light work.  Moreover, Riggs correctly argues that the grids

2   do not "completely and accurately" represent her limitations, as required by Tackett for proper

3   grids use.  Riggs' alleged mental impairments  would potentially interfere with her ability to

4   perform the *full range* of light work.  Although the ALJ purportedly made this Step Five finding

5   "in the alternative" to his Step Four finding, he nevertheless erred in improperly applying the

6   grids to Riggs' cocktail of complaints.

7   **V.   The ALJ's Findings Regarding Physicians' Testimony**

8        Riggs argues that remand is warranted based on the ALJ's failure to articulate "good

9   reasons," as required by 20 C.F.R. § 404.1527(d)(2), for discrediting or disregarding the

10  opinion of treating sources, specifically the opinions of Dr. Healey, Dr. Maternowski, Dr.

11  DeWys, Dr. Coates, and Dr. Kiester.  Riggs argues that the ALJ selectively and improperly

12  singled out elements of these physicians' evaluations, instead of considering their opinions in

13  their entirety.  Riggs further contends that the ALJ's conclusion that Riggs could perform light

14  work implied that Riggs' physical impairments were less severe in the aggregate than those

15  described by the physicians.  Thus, argues Riggs, the basis for the ALJ's dismissal of the

16  physicians' opinions is unclear.  Furthermore, Riggs contends that this court cannot deem the

17  ALJ's failure to provide "good reasons" for his rejection of the physicians' opinions harmless

18  error, because the opinions supporting her alleged impairments are not inadequate as a

19  matter of law.  See, e.g. Brueggemann v. Barnhart, 348 F.3d 689, 695-96 (8th Cir. 2003).

20       The Commissioner counters that substantial evidence in the record supported the

21  ALJ's RFC finding, because the ALJ based his RFC finding, in part, on substantial evidence

22  consisting of the opinions of Dr. Downs, Dr. Maternowski, Dr. Ragle, and the non-examining

23  State Agency physician.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (findings

24  of nontreating, nonexamining physician can amount to substantial evidence if other evidence

25  in the record supports those findings); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

26  (opinion of examining source that is based on independent clinical findings constitutes

27  substantial evidence); Nichols v. Califano, 556 F.2d 931, 933-934 (9th Cir. 1977) (disability

28

**United States District Court**
For the Northern District of California

1   may not be found where failure to follow prescribed treatment is not justifiable or reasonable);

2   20 C.F.R. § 416.907 (an individual who willfully fails to follow prescribed treatment cannot, by

3   virtue of such failure, be found to be under a disability.)

4          Ninth Circuit case law distinguishes the weight to be accorded to the opinions of three

5   types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

6   examine but do not treat the claimant (examining physicians); and (3) those who neither

7   examine nor treat the claimant (non-examining physicians).  Lester, 81 F.3d at 830.

8   Generally, controlling weight is given to a treating physician's opinion regarding a claimant's

9   medical disability.  Id.  If a discrepancy exists between the opinions of the different physicians,

10  the ALJ may discount a treating physician's opinion by setting forth "specific and legitimate

11  reasons" based upon substantial evidence.  Id. at 830-31.  The ALJ can meet this burden by

12  "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

13  stating his interpretation thereof, and making findings."  Morgan v. Comm'r of Soc. Sec.

14  Admin., 169 F.3d 595, 600-01 (9th Cir. 1999).  The ALJ has an affirmative duty to develop the

15  record to preserve the interests of the claimant.  Brown, 713 F.2d at 443.  An ALJ's

16  paraphrasing of record material must be accurate with respect to the content or tone of the

17  record.  Reddick, 157 F.3d at 722.  Finally, although the ALJ can and must weigh conflicting

18  evidence: "he cannot reach a conclusion first, and then attempt to justify it by ignoring

19  competent evidence in the record that suggests an opposite result."  Gallant v. Heckler, 753

20  F.2d 1450, 1456 (9th Cir. 1984).

21         Riggs specifically disputes, in her papers,  the ALJ's treatment of the following

22  physicians: Dr. Healey, Dr. Maternowski, Dr. DeWys, Dr. Coates, and Dr. Kiester.  The court

23  will address each physician's opinion, as well as the ALJ's purported reasons for discrediting

24  that opinion, in turn.

25         **1.      Dr. Healey**

26

27

28

United States District Court
For the Northern District of California

1    The ALJ cites Dr. Healey's finding that Riggs suffered bilateral osteoarthritis[1] and

2    degenerative cervical disc disease.[2]  A.R. 20.  However, the ALJ also notes that the

3    conditions "were generally mild" and that Riggs planned to soon move to Alaska.  The

4    Commissioner argues in her opposition that the ALJ's analysis with regard to Healey, among

5    others, was proper because, although he diagnosed various conditions, Riggs failed to

6    demonstrate that Healey's statements contained findings of mental or physical limitations.

7    Riggs counters that the ALJ failed to make a "weighing determination" as to the

8    relevancy of Dr. Healey's opinion.  Moreover, Riggs argues that the ALJ's reading of Healey's

9    assessment of Riggs' impairments as "generally mild" has no basis in Dr. Healey's report,

10   and fails to account for Dr. Healey's prescription for Vicodin[3] for Riggs.

11   Because Dr. Healey was a treating physician, to properly discount any part of Dr.

12   Healey's opinion, the ALJ was required to provide a thorough and detailed summary of facts

13   detailing conflicting evidence on the record.  See, Morgan, 169 F.3d at 600-01.  The ALJ

14   erred in his failure to elucidate his reasons for deeming Dr. Healey's findings "generally mild."

15   Moreover, the Commissioner's assertion that Riggs failed to demonstrate that Dr. Healey's

16   findings failed to show mental or physical limitations ignores the legal standard imposed by

17   Morgan.  Thus, the ALJ failed to sufficiently recite substantial evidence on the record to

18   sufficiently contradict Dr. Healey's findings.

19   **2.    Dr. Maternowski**

20   The ALJ acknowledges a referral letter from Dr. Maternowski, noting that Dr.

21

22   [1] Osteoarthritis is "arthritis characterized by erosion of articular cartilage, either primary
23   or secondary to trauma or other conditions, which become soft, frayed, and thinned...." Stedman's
     Medical Dictionary (27th ed.) at 1282 (Stedman's).

24   [2] Cervical disc disease results from deterioration in the intervertebral discs between two
25   vertebrae and manifests itself with the formation of bony outgrowths or protuberances that narrow
     the cervical canal.  See The Merck Manual at 1490.  Symptoms include neck pain, shoulder pain,
26   headaches and pain radiating down the arm.  See Lawyers' Medical Cyclopedia, § 16.10 at 16-
     34.

27   [3] Vicodin is a narcotic analgesic agent used for the relief of moderate to moderately
28   severe pain.  See Physician's Desk Reference (59th ed. 2005) at 526.

United States District Court

For the Northern District of California

1    Maternowski observed chronic knee and cervical pain.  A.R. 20.  The ALJ focused on Dr.

2    Maternowski's statement that, although Riggs had been referred to physical therapy, she had

3    attended either intermittently or not at all.  The Commissioner argues that Dr. Maternowski

4    gave no indication of disability, and that the ALJ gave sufficient reasons for discrediting any

5    finding of disability based on Riggs' failure to follow the prescribed treatment of physical

6    therapy.

7         The Commissioner's argument fails here as well, because the ALJ failed to give

8    specific reasons for focusing on certain aspects of Dr. Maternowski's letter, and disregarding

9    other aspects.  The ALJ properly noted that Riggs had not fully embraced the physical therapy

10   that was recommended to her.  However, the ALJ must paraphrase the record in a way that

11   comports with the tone and content of the record.  Reddick, 157 F.3d at 722.  Here,

12   Maternowski's referral letter certainly acknowledges Riggs' physical limitations, yet the ALJ

13   focused only on Dr. Maternowski's statements regarding Riggs' failure to expedite physical

14   therapy.  A.R. 162.

15        **3.    Dr. Coates**

16        The ALJ rejects Dr. Coates' finding of Riggs' "marked fatigability" because Dr. Coates

17   allegedly does not relate this finding to clinical findings.  A.R. 20.  An ALJ may reject a

18   physician's opinion if it is not based on clinical or otherwise reliable evidence.  Brawner, 839

19   F.2d at 434.  For example, in Brawner, the ALJ properly rejected a treating physician's

20   opinion because it was based on Brawner's own complaints and testimony, which the ALJ

21   had found not credible.  Id.

22        Here, the ALJ failed to articulate his reasons for rejecting Dr. Coates' opinion that

23   Riggs suffered from "marked fatigability."  The ALJ misstated Dr. Coates' opinion by stating

24   that "[Riggs] complained of marked fatigability," when, in fact, Dr. Coates' letter simply reads:

25   "[Riggs] suffers from marked fatigability."  A.R. 153.  The ALJ apparently concluded that Dr.

26   Coates had based his finding on Riggs' "less than credible" complaints, but offers no support

27   for this assumption.  Absent a specific reason for rejecting Dr. Coates' testimony, Riggs

28

United States District Court

For the Northern District of California

1    correctly argues that the ALJ improperly dismissed Dr. Coates' finding of "marked fatigability."

2

3        **4.    Dr. Kiester**

4        The ALJ found that Dr. Kiester "withdrew from providing [Riggs] with medical care,"

5    without articulating what significance this fact may have.  A.R. 20.  Dr. Kiester's letter reveals,

6    however, that Dr. Kiester stated that he withdrew his medical services from Riggs because he

7    felt that her ailments were "beyond [his] scope of practice," and that she would "benefit a great

8    deal more if [she] were to see a specialist."  A.R. 201.  The tone of Dr. Kiester's letter

9    suggests that the ALJ either misread or misconstrued Dr. Kiester's decision to withdraw his

10   medical services from Riggs.  The ALJ thus did not fulfill his duty to construe the tone of

11   evidence in the record properly.

12       **5.    Dr. DeWys**

13       The Commissioner argues that the record shows that Dr. DeWys was a one-time

14   examining physician, and that there is no evidence to demonstrate that Dr. DeWys ever

15   treated Riggs.  The Commissioner also contends that Dr. DeWys never provided any clinical

16   records or findings to support his opinion.  Thus, contends the Commissioner, Dr. DeWys'

17   purported RFC assessment did not constitute substantial evidence which the ALJ was

18   required to consider.  See Thomas, 278 F.3d at 957 (findings of nontreating physicians can

19   amount to substantial evidence only if other evidence in the record supports those findings).

20       However, Dr. DeWys' report contains a reference to medications prescribed to Riggs.

21   Included in those medications is Zoloft[4], which the prescription sheet shows to have been

22   prescribed by Dr. DeWys.  Thus, the Commissioner's conclusion that Dr. DeWys was a

23   nontreating physician is erroneous.  As such, Morgan dictates that the ALJ give specific

24   reasons for rejecting Dr. DeWys' findings.  The ALJ erred in his failure to mention Dr. DeWys'

25   report at all in his ruling.

26   _____

27       [4] Zoloft is a selective serotonin re-uptake inhibitor used for the treatment of mental
     impairments including major depressive disorder, obsessive-compulsive disorder, and panic
28   disorder.  See Physician's Desk Reference at 2682.

**United States District Court**
For the Northern District of California

1
2
3

**VI.    Riggs' Allegations that the Commissioner Failed to Follow Her Own**
**Rules and/or Failed to Present Substantial Evidence in Support of Her**
**Arguments**

4    In her opposition to the Commissioner's motion for summary judgment, Riggs argues

5    as follows: (1) that she has carried her burden of presenting complete and detailed objective

6    medical reports; (2) the ALJ improperly discounted the lay witness statements of Mark Pitsch,

7    Mary Lynne Licata, Pam LeFever, and Shawn Corbeil; (3) the ALJ improperly rejected various

8    chiropractor opinions; (4) the ALJ improperly rejected opinions of Allan G. Coates, D.O.; (5)

9    the ALJ improperly used the referral letter from Andrew Maternowski, M.D. to demonstrate

10   that Riggs had either not attended or had only intermittently attended recommended physical

11   therapy; (6) the ALJ improperly rejected the opinion of Matthew DeWys, D.O.; (7) the ALJ

12   improperly decided not to accord any weight to the opinions of the non-examining State

13   Agency physicians.

14
15

**1.    Riggs' burden to present complete and detailed objective medical**
**reports**

16   Riggs addresses the Commissioner's argument here by referencing her arguments I-

17   V, see above.  Riggs' contention that the ALJ "just picks and chooses what he wants to

18   support his own subjective determination" is also addressed above.

19
20

**2.    The lay witness statements of Mark Pitsch, Mary Lynne Licata,**
**Pam LeFever, and Shawn Corbeil.**

21   Riggs also claims that the ALJ improperly discounted the testimony of lay witnesses

22   Mark Pitsch, Mary Lynne Licata, Pam LeFever, and Shawn Corbeil.

23   The ALJ has the authority to determine whether a claimant's testimony is credible.

24   Reddick, 157 F. 3d at 722.  An ALJ may reject lay testimony if he gives reasons germane to

25   the witness.  Dodrill v. Shalala, 12 F. 3d 915, 919 (9th Cir. 1993).  Although lay witnesses

26   have to rely, at least to some extent, on communications with the claimant to assess the

27   claimant's condition, the Ninth Circuit has held that friends in a position to observe a

28

21

United States District Court

For the Northern District of California

1   claimant's symptoms and daily activities are competent to testify as to her condition.  Id.

2   "Disregard of this evidence violates the Secretary's regulation that he will consider

3   observations by non-medical sources as to how an impairment affects a claimant's ability to

4   work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987), citing 20 C.F.R. §

5   404.1513(e)(2).

6          With respect to Pitsch's testimony, Riggs argues that the Commissioner's reliance on

7   Dodrill is misplaced.  Riggs correctly cites Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.

8   1996), which expanded on Dodrill.  The Nguyen court held that "[l]ay testimony as to a

9   claimant's *symptoms* is competent evidence which the Secretary must take into account ...

10  unless he expressly determines to disregard such testimony, in which case 'he must give

11  reasons that are germane to each witness.'"  100 F.3d at 1467 (emphasis in original).  In

12  Nguyen, the Secretary, relying on Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984),

13  erroneously argued that it was proper for the ALJ to disregard lay testimony without giving

14  specific reasons for doing so, when the lay witness testimony conflicts with available medical

15  evidence.  Nguyen, 100 F.3d at 1467.  The Nguyen court carefully limited this rule to situations

16  in which lay witnesses were not making medical diagnoses beyond their competence as

17  witnesses.  Id.  "[L]ay witness testimony as to the claimant's symptoms or how an impairment

18  affects ability to work *is* competent evidence ... and therefore *cannot* be disregarded without

19  comment."  Id., citing Dodrill, 12 F.3d at 919; 20 C.F.R. § 404.1513(e); Sprague, 812 F.2d at

20  1232 (emphasis in original).

21         The ALJ disposed of Pitsch's testimony by asserting that a statement by a lay witness

22  "who had known the claimant for about six months does not significantly aid in relating clinical

23  findings to her functional capacity."  A.R. 20.  The Commissioner argues that the ALJ properly

24  rejected this testimony because Pitsch failed to describe the nature of his relationship to

25  Riggs, and whether he observed her on a daily basis.  However, the ALJ here failed to comply

26  with the Dodrill requirement that the ALJ state, on the record, reasons germane to the witness

27  for rejection of the witness' testimony.  The ALJ failed to articulate any such reasons with

28

22

United States District Court

For the Northern District of California

1  respect to Pitsch's testimony.  See A.R. 20.

2          Moreover, the ALJ failed to address the testimony by the other three lay witnesses *at

3  all*.  Dodrill requires that the ALJ at least acknowledge the testimony of lay witnesses.  12 F.

4  3d at 919.  Thus, the ALJ erred when he failed to set forth reasons as to why he chose to

5  discount the lay testimony.

6                          **3.      Chiropractor opinions**

7          Riggs contends that the ALJ erred in rejecting chiropractors' opinions regarding her

8  alleged impairments, because "a chiropractor is not an acceptable medical source under the

9  disability regulations," citing 20 C.F.R. § 416.913(a).  Riggs argues that 20 C.F.R.        §

10  416.913(d) permits evidence from "other sources," that is, sources other than the acceptable

11  medical sources listed in paragraph (a) of the same subsection, to demonstrate the severity of

12  a claimant's impairments and how they affect the claimant's ability to work.  Because

13  chiropractors are listed as potential "other sources" in 20 C.F.R. 416.913(d), Riggs argues

14  that the ALJ erred by refusing to admit and give weight to the chiropractors' testimony of

15  severity.

16          The Commissioner correctly notes that 20 C.F.R. § 416.913(d) provides the ALJ the

17  discretion to use "other sources," including chiropractors, in assessing a claimant's disability.

18  See 20 C.F.R. § 416.913(d).   "In addition to evidence from the acceptable medical sources

19  listed in paragraph (a) of this section, we *may* also use evidence from other sources...."  20

20  C.F.R. § 416.913(d) (emphasis added).  Riggs erroneously argues that the Commissioner

21  must accept the chiropractors' opinions because they concern the severity of her impairments,

22  as opposed to their medical determinability.  In so arguing, Riggs fails to acknowledge the

23  statutory language which clearly provides the ALJ with the discretion to accept such opinions.

24  See 20 C.F.R. § 416.913(d).

25          Case law supports the Commissioner's position as well.  In Bunnell v. Sullivan, the

26  claimant appealed the ALJ's denial of benefits, arguing that the ALJ improperly rejected her

27  treating chiropractor's opinion that the claimant was temporarily unemployable.  912 F.2d

28

1149, 1153 (9th Cir. 1990), rev'd on other grounds, 947 F. 2d 341 (9th Cir. 1991) (en banc);

see also 20 C.F.R. § 404.1513(a) and (e) (distinguishing between "acceptable medical

sources" and "other sources," and listing chiropractors under "other sources").  The Ninth

Circuit held, however, that because a chiropractor is not considered an acceptable medical

source, a claimant may offer chiropractic evidence to illuminate her inability to work, but the

Commissioner is not statutorily required to accept or specifically refute such evidence.  Id.;

see 20 C.F.R. § 404.1513(e)(3).  Thus, the ALJ did not err in exercising his discretion by

rejecting the opinions of the chiropractors.

### 4.    Remaining Arguments

The remaining arguments raised by Riggs in rebuttal as set forth above have been

addressed previously in this court's order.

### CONCLUSION

For the foregoing reasons, Riggs' motion for summary judgment is GRANTED in part

and DENIED in part.  The Commissioner's cross-motion for summary judgment is DENIED.

The court concludes that the ALJ erred as follows: (1) at Step Two, in failing to apply 20 C.F.R.

§ 404.1520a to Riggs' alleged mental impairments; (2) at Step Four, in improperly relying on

the grids, instead of VE testimony; (3) in failing to articulate sufficient reasons for discrediting

or disregarding the opinions of treating sources; and (4) in failing to articulate reasons

germane to each lay witness for rejecting the witnesses' testimony. Accordingly, remand for

further proceedings consistent with these findings is appropriate pursuant to sentence four of

42 U.S.C. § 405(g).

This order fully adjudicates the motions listed at Nos. 8 and 9 of the clerk's docket for

this case, closes the case, and terminates all pending motions.

**IT IS SO ORDERED.**

**United States District Court**

For the Northern District of California

1

2   Dated: July 21, 2005

3   _____

4   PHYLLIS J. HAMILTON
    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California